ALANSON S. PAGE and Another, Respondents, *v.* ANTON G. METH-
FESSEL, Appellant.

*Principal and agent — evidence as to who is the principal — charge of an account
against an agent, as such, when a sufficient charge against his principal — laches
in allowing bills to accumulate — referee's decision conclusive as to his minutes —
power of a referee to open a case upon terms.*

In an action brought against one Methfessel to recover the value of goods sold
and delivered to one "Philip Michel, Agent," it was claimed, on the part of
the plaintiff, that the defendant was the principal, and Michel the agent. It
appeared that before the 29th of April, 1886, the business of manufacturing
and decorating window shades at defendant's factory was commenced under
the name and style of "Philip Michel, Agent," and business was carried on
under that name until after June 9, 1891, during which time Michel was the
principal shademaker and managing agent for the business, and the defendant
was the office man and bookkeeper, and had charge of the finances thereof.

On April 29, 1886, Michel, as agent, had a negotiation with a salesman of the plain-
tiffs, with reference to the purchase of goods from them, to be used for the pur-
pose of manufacturing and decorating in such factory. The salesman inquired of
Michel as to his financial responsibility, and Michel replied that he had a friend
who would advance him money to do business, and thereupon Michel took
him to the defendant's house, introduced him to the defendant and left. After
Michel left, the salesman asked the defendant whose agent Michel was, and the
defendant said that Michel had been unfortunate and could not use his own
name; that he was ready to assist him according to his ability, and that he
would be responsible for all the orders received from Michel, countersigned by
him. The defendant then, at the salesman's request, wrote, signed and deliv-
ered to him a memorandum declaring himself to be responsible for all orders
sent by Michel, as agent, to the plaintiffs, if the same were countersigned by
him. On the same day and occasion an order was delivered to the salesman,
signed by Philip Michel, agent, and countersigned by the defendant. The
goods were shipped as directed, and thereafter the plaintiffs received from the
defendant, by mail, his individual check for the amount of the order, less a
discount allowed for payment within thirty days. The next order was, appar-
ently, made about May twenty-fifth, and, by reason of the defendant's absence,
it was not countersigned by him.

On June 21, 1886, the defendant wrote the plaintiffs, inclosing an order, request-
ing the sending thereof to Philip Michel, agent, at their earliest convenience,
and inclosing his check for the amount of seven bills, from May twenty-fifth
to June fourteenth. In this letter he also said, "Our intention is to pay always
cash, and if we did not do it this time, it is because I was absent on a trip west,
and we thought that the goods bought of you on the first days of May would
last until my return. Orders, however, coming in earlier and larger than we
expected, Mr. Michel applied to you for more goods, which you sent without

my guarantee, thereby doing us a favor, for which we feel grateful. I send the full amount of those seven bills, trusting that you will allow all the discount you possibly can, and deduct the same from the amount of next bill."

After the first order none were, in form, countersigned by the defendant. Some were sent by the defendant himself, and many letters of the defendant were put in evidence, from which it might be inferred that the defendant had a personal interest in the business. The goods, however, were mainly ordered by "Philip Michel, Agent," and all were shipped and charged in that form. All of the goods ordered and shipped down to October 2, 1890, were paid for by the individual check of the defendant, inclosed in letters written by him to the plaintiffs.

The orders since that time were the items involved in this suit. All the goods sent by the plaintiffs were used at such factory, and all the proceeds of sales thereof, excepting a small amount, were turned over to and received by the defendant, and were deposited by him, with other moneys of his, in his bank account.

On the part of the defendant it was shown that Michel was, in fact, the agent of his wife, and employed the defendant as his bookkeeper and cashier; that the defendant kept an account of the moneys received, and checked them out as directed by Michel, all of which was, however, unknown to the plaintiffs.

The referee, before whom the case was tried, decided that the defendant held himself out as the principal engaged in the business, and was liable to the plaintiffs for the amount of the unpaid bills, to recover which the action was brought.

*Held*, that the evidence warranted the conclusion that the condition in the writing of April 29, 1886, to the effect that the orders should be countersigned by the defendant, was waived by him, and that the judgment should be affirmed;

That the accounts charged to Philip Michel, agent, were a sufficient charge against the defendant;

That as the defendant presumptively knew all about the orders sent to the plaintiffs, and knew that the bills in suit were not paid, there was no defense to such an action in the fact of plaintiffs' *laches* in allowing the bills to accumulate.

It is for a referee to determine whether the minutes taken before him are correct, and his decision of that question is conclusive.

In such an action, the referee has discretionary power to open the case upon terms as to the costs of the motion to open the case, and the further attendance before him and the expense of rebutting testimony.

APPEAL by the defendant, Anton G. Methfessel, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Oswego on the 25th day of July, 1892, upon the report of a referee, with notice of an intention to bring up for review upon such appeal the order made by the referee herein, dated June 4, 1892.

The referee found, as conclusions of law, that the defendant, prior to the purchase of said goods in suit, to wit, prior to October 8, 1890, held himself out to and represented himself to the plaintiffs as a principal engaged in the business so carried on under the name of Philip Michel, agent, and the plaintiffs believed, and sold and delivered said goods upon such representation. That, as between the parties hereto, the defendant purchased of the plaintiffs, and the plaintiffs sold and delivered to the defendant upon his request and promise to pay therefor, the goods, wares and merchandise aforesaid, at the times, for the prices, and upon the terms aforesaid. That the defendant, prior to the purchase of the goods in suit, to wit, prior to October 8, 1890, held out the said Philip Michel to the plaintiffs as his agent, and represented to them that said Michel was his, the defendant's, agent for the purchase of said goods in suit, to wit, the bills of goods from and including October 8, 1890, to and including June 9, 1891; that the plaintiffs believed and relied upon, and sold and delivered said goods upon such representations, and the defendant is liable to the plaintiffs for the said purchase price thereof, less freight, together with interest, and less a credit with interest for goods returned; and that the plaintiffs are entitled to recover of the defendant the following sums, with interest, as hereinafter stated, less a credit of thirty-nine dollars and thirty-eight cents, with interest thereon from April 1, 1891, to wit:

In the complaint, it is alleged that at divers times between October 7, 1890, and June 10, 1891, the plaintiffs, at the request of defendant and on his promise to pay therefor, sold and delivered to him goods at prices agreed upon and payable in sixty days, amounting to and of the value of $4,078.90. The answer denies, in substance, all the allegations of the complaint, except that the defendant admits he has been requested to pay certain moneys to plaintiff.

*Van Hoevenberg & Holt*, for the appellant.

*D. P. Morehouse*, for the respondents.

MERWIN, J.:

All of the goods for which a recovery has been had in this case were ordered by " Philip Michel, agent," and were shipped by plain-

tiffs to " Philip Michel, agent," at Stapleton, Staten Island, and were charged in the same way upon plaintiffs' books. The referee has found that the defendant, by his acts and conduct in these and similar prior transactions with plaintiffs, held Michel out to them as his agent in purchasing these goods, and that, in reliance upon that and in the belief induced by such acts and conduct that defendant was the principal behind Michel, they made the sales in question. In other words, it was held that the plaintiffs had the right to treat the defendant as the principal in the transactions. The question in this case is whether such finding of the referee is sustained by the evidence.

The plaintiffs are manufacturers at Minnetto, Oswego county, of shade cloth, window curtains and fixtures, under the firm name of the Minnetto Shade Cloth Company. The defendant, since April 1, 1886, has resided at Stapleton, Staten Island, and owned there a factory building for the manufacture and decorating of shade cloth into window shades. During this period, Philip Michel, who is a practical window shade manufacturer, lived at Stapleton. In the latter part of April, 1886, and before the twenty-ninth, the business of manufacturing and decorating window shades at defendant's factory was commenced under the name and style of "Philip Michel, agent," and such business was carried on under that name until after June 9, 1891. During this time Michel was the practical shademaker and managing agent of the business, and defendant was the office man and bookkeeper and had charge of the finances of the business. On the 29th of April, 1886, Michel as agent had a negotiation with one Gillett, who was a salesman and agent of the plaintiffs, in reference to the purchase of goods from the plaintiffs for the purpose of manufacturing and decorating in said factory. Gillett inquired of Michel as to his financial responsibility, and Michel replied : " I have a friend who will advance me some money to do business," and thereupon Michel took Gillett to the house of defendant, introduced him to defendant and then left. After Michel left, Gillett asked defendant whose agent Michel was, and defendant replied, " He has been unfortunate and cannot use his own name. I am ready to assist Mr. Michel according to my ability. All the orders received from Mr. Michel, countersigned by myself, I will be responsible for." The defendant then, at Gillett's request, wrote,

FOURTH DEPARTMENT, SEPTEMBER TERM, 1893. [Vol. 71.

signed and delivered to him a memorandum, of which the following is a copy :

" STAPLETON, *April* 29, 1886.

" I herewith declare myself to be responsible for all, orders sent by Phil. Michel, Agent, to the Minnetto Shade Cloth Company, if the same are countersigned by me.

" A. G. METHFESSEL."

After this and on the same day and occasion, an order was signed and delivered to Gillett as follows :

" Philip Michel, Agent.

"1 pc. ea. 18–32–38–62–66–68–64–58.

" PHILIP MICHEL, Agent, Stapleton.

" A. G. METHFESSEL."

These goods were shipped as directed, and soon thereafter the plaintiffs received in payment thereof from the defendant by mail his individual check on the German American Bank of New York, for the amount of the order less a discount of two per cent allowed for payment within thirty days. The next order seems to have been about May twenty-fifth and not countersigned by defendant by reason of his absence. On the 21st of June, 1886, the defendant writes to the plaintiffs inclosing an order as to which he says, " You will oblige me by sending, at your very earliest convenience, to Phil. Michel, agent." He also inclosed his check for the amount of seven bills from May twenty-fifth to June fourteenth. In this letter, he also says : " Our intention is to pay always cash, and if we did not do it this time, it is because I was absent on a trip west, and we thought that the goods bought of you in the first days· of May would last until my return. Orders, however, coming in earlier and larger than we expected, Mr. Michel applied to you for more goods, which you sent without my guarantee, thereby doing us a favor, for which we feel grateful. I send the full amount of those seven bills, trusting that you will allow all the discount you possibly can, and deduct the same from the amount of next bill." After the first order, none were in form countersigned by defendant. Some orders, however, were sent by the defendant himself, and many letters of defendant are in evidence from which it might be inferred that the defendant had a personal interest in the business. For

instance, on the 25th of September, 1886, he sends an order for certain specified goods, and adds " we will soon give you larger orders.". The goods, however, were mainly ordered by " Philip Michel, Agent," and all were shipped and charged in that form. The dealings were quite large, comprising hundreds of orders, aggregating about $35,000, and continued to June 9, 1891. All of the goods so ordered and shipped down to October 2, 1890, were paid for from time to time by the individual checks of the defendant on the German American Bank of New York inclosed in letters written by him to the plaintiffs. The orders since October 2, 1890, are the items involved in this suit. All the goods sent by the plaintiffs were used at the factory in Stapleton, and all the proceeds of their sale after being manufactured, excepting a small amount, were turned over to and received by the defendant and were deposited by him with other moneys belonging to him in his bank account with the German American Bank.

It is shown on the part of the defendant that Michel was in fact the agent of his wife and employed the defendant as his bookkeeper and cashier, and that defendant kept an account of the moneys received and checked them out as directed by Michel. All this, however, was unknown to plaintiffs.

Defendant was in a position to know all the orders sent, and no objection was made by him that they were not countersigned by him, or that Michel did not have authority to bind him.

These are the main features of the case. It seems to me very clear that the evidence warranted the conclusion that the limitation or condition in the writing of April 29, 1886, that the orders should be countersigned by the defendant, was waived by the defendant, or at least that the plaintiffs had a right to believe that it was not required by defendant. In his letter of June 21, 1886, he excused the want of it and treated it as a favor that the plaintiffs sent the goods without it. And for four years and upwards thereafter he paid the bills without question and without any suggestion that the countersigning was important. If the limitation was waived, that left the declaration of defendant general that he would be responsible for all orders sent to plaintiffs by Michel as agent. This responsibility was in effect acknowledged by the defendant, so far as the plaintiffs were concerned, from June, 1886, to October,

1890. The plaintiffs were informed of no other person as principal. The defendant himself gave orders and indicated a personal interest in the business. The authority given by the paper of April 29, 1886, was never revoked. The plaintiffs had a right to assume that the authority continued after October, 1890, as it had existed before. (*Bodine* v. *Killeen*, 53 N. Y. 93.)

It is suggested that the credit was not given to defendant because the goods were charged to Michel as agent. That form of charge indicated that credit was not given to Michel individually, and there was no other known to plaintiffs to whom credit would be given except the defendant. The plaintiffs' agent, before the commencement of the negotiation in April, 1886, was informed that Michel was insolvent, and it is easy to infer that no one intended or expected that credit would be given to him. It is also suggested that the plaintiffs did not testify that they relied on defendant. In such a case it is said in *Brown* v. *Bowen* (30 N. Y. 520), that, in the absence of proof of the effect of the admission on the party setting up the estoppel, it is for the jury to say whether on the facts the several essential parts of the estoppel are proved.

In the present case it was a question of fact whether the defendant, by his acts and conduct, held out Michel to the plaintiffs as his agent and whether, from such acts and conduct, the plaintiffs were led to believe and did believe that the defendant was the principal and relied on this in selling the goods in suit. The conclusion of the referee on this subject should not, I think, under the circumstances of this case, be disturbed.

But it is said that the plaintiffs were guilty of *laches* in allowing the bills in suit to accumulate. Still, the defendant, by reason of his position in the business, presumptively knew all about the orders that were being sent to plaintiffs and knew that the bills in suit were not paid. He was bookkeeper and had charge of the finances, and the proceeds of all the goods sent by the plaintiffs, including these in suit, were turned over to him. He made no suggestion to the plaintiffs that he did not propose to pay any more, or proposed to change the current of the business. A large portion of the goods in suit were ordered before the payments on the prior account were completed. We fail to see any defense on the ground of *laches*.

After the evidence before the referee was closed, and before the

decision of the case, a motion upon affidavits and notice to plaintiffs was made before the referee to correct the minutes of the referee of the testimony of the defendant as to his answer to a particular question, or that the trial be opened. Affidavits were used by plaintiffs in opposition to the motion, and there was a conflict as to what the testimony in fact was. The motion to correct the minutes was denied, but on motion of the counsel for defendant, leave was given to defendant to recall the witness upon certain terms as to the costs of the motion and the further attendance before the referee and the expenses of rebutting testimony. Nothing further was done, the terms apparently not being satisfactory. Whether the minutes were correct was for the referee to determine, and his decision on that is conclusive. (*Tweed* v. *Davis*, 1 Hun, 252.) The terms for opening the case were within his discretion, and no sufficient reason appears for this court to say that such discretion was abused.

HARDIN, P. J., and PARKER, J., concurred.

Judgment and order affirmed, with costs.